**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> TODD BECKER, <br><br> Defendant. | No. CR06-3022-MWB <br><br> **REPORT AND RECOMMENDATION ON PRETRIAL MOTIONS** |

_____

On September 9, 2006, the defendant filed a motion (Doc. No. 20) to suppress evidence obtained during a search of his person and his residence on January 3, 2006, and a motion (Doc. No. 21) to suppress statements he made to law enforcement officers on January 3, 2006. The plaintiff (the "Government") has resisted both motions (Doc. Nos. 29 & 30). The trial management order (Doc. No. 14) assigned motions to suppress to the undersigned for review, and the filing of a report and recommended disposition. Accordingly, on October 2, 2006, an evidentiary hearing was held on the motions. Assistant U.S. Attorney C.J. Williams appeared on behalf of the Government. The defendant Todd Becker appeared in person with his attorney, Charles L. Hawkins. The Government offered the testimony of Marc Borgman, a former probation and parole officer based in Mason City, Iowa; and Sheffield, Iowa, police officer Brent Brass. One exhibit was admitted into evidence, to-wit: **Gov't Ex. 1** - a probation agreement dated 11/14/05, signed by Todd J. Becker and Marc R. Borgman.

The motions are now fully submitted, and the court undertakes consideration of the motions as directed by Chief Judge Mark W. Bennett in the trial management order.

## BACKGROUND FACTS

On November 1, 2005, Becker was placed on two years' probation by the State of Iowa for possession of methamphetamine, second offense, an aggravated misdemeanor. Marc Borgman was Becker's probation officer. In connection with his probation, Becker signed a probation agreement on November 14, 2005, in which he agreed to comply with certain conditions of probation. (*See* Gov't Ex. 1) Among other things, Becker agreed not to have contact with persons known to be or suspected of being engaged in illegal drug use, manufacture, or sale; and to submit to a search of his person, residence, and property "at any time, if reasonable suspicion exists, by a peace officer or probation/parole officer." (*Id.*) Becker also agreed not to use illegal drugs, and to "actively cooperate with, participate in, and complete any programs or services" as directed by his Probation Officer. (*Id.*)

Becker promptly violated the agreement in two respects. First, at the end of November 2005, he submitted a urine sample that tested positive for drug use. Borgman directed Becker to seek drug treatment, and gave him several options. He directed Becker to obtain an evaluation and enter a treatment program within one month. By January 3, 2006, Becker still had not entered into a treatment program, constituting a second violation of the probation agreement.

Officer Brass knows Becker and where Becker lives as a result of the officer's job patrolling the city of Sheffield. During December 2005, Officer Brass had seen Lisa Seversen visiting at Becker's residence. He had arrested Seversen in October 2005, for possession of a little over a gram of methamphetamine. He arrested Seversen again in late December 2005, again for possession of methamphetamine. Following the December arrest, the officer continued to see Seversen visiting at Becker's home. Officer Brass contacted Borgman to ask what types of activities would violate Becker's probation. From the officer's testimony at the hearing, it was apparent to the court that the officer suspected

Seversen and Becker were engaging in illegal drug-related activities, and he was interested in investigating further. The officer told Borgman he believed Becker was violating his probation in associating with Seversen, and they discussed getting into Becker's residence to see if there was any illegal activity taking place there. Borgman believed Becker's association with Seversen before and after her arrest on methamphetamine charges constituted reasonable suspicion to conduct a search of Becker's residence pursuant to the probation agreement. Borgman and Officer Brass previously had talked about searching Becker's home, and they believed Seversen's arrest would give them that opportunity.

On January 3, 2006, at about 1:00 p.m., Borgman went to Becker's residence with the intent of conducting a search of the premises. Borgman was accompanied by Officer Brass and Deputy Jamie Sullivan. Borgman testified he usually, though not always, takes an officer with him to conduct this type of home visit. Borgman was wearing street clothing. The officers were wearing polo shirts bearing their agency logos, and both officers were wearing sidearms. They first made contact with Becker as he was coming out of his garage. Borgman and the officers identified themselves. Borgman told Becker why they were there, and asked if they could go back into the garage. When they entered the garage, Becker's brother Tom was present. The officers told Tom Becker he could either empty his pockets, for officer safety, or he could leave. Tom chose to leave, and he left the premises.

Borgman then asked Becker if they could "have a look around" the garage and residence, and Becker agreed. As they entered the residence, Borgman also asked Becker to provide a urine sample, and Becker complied. As Borgman and the officers approached each room in the house, Borgman again would ask if they could have a look around, and Becker again would agree. Becker accompanied Borgman and the officers through the house and observed as their search took place. He was not handcuffed or restrained in any

way, and he never raised a protest or withdrew his consent to the search. No promises or threats were made to Becker at any time.

Borgman and the officers eventually reached a room next to Becker's bedroom in which Borgman could see a safe. He asked Becker if they could take a look in the safe, and Becker agreed. The safe was locked, and at Borgman's request, Becker unlocked the safe, using a key from a key chain on his jeans. Officer Brass bent down to look inside the safe and immediately detected the odor of marijuana. He could see a small bag of marijuana and some money bags in the safe. The officer withdrew the bag of marijuana and also saw a small bag of what appeared to be methamphetamine. Becker was asked to open a locked money bag, and he complied.

Borgman or Officer Brass asked Becker if anyone else had keys to the safe, and Becker responded, "No." Borgman asked Becker whose drugs were in the safe, and Becker did not respond. Becker was placed under arrest. The time from Borgman's first contact with Becker until Becker's arrest was approximately twenty to twenty-five minutes.

It is undisputed that no *Miranda* warnings were given to Becker until after his arrest. It also basically is undisputed that throughout the encounter, Borgman used terminology like "have a look around in here," rather than the word "search," when he referred to their examination of Becker's residence. On January 4, 2006, Borgman filed a violation report regarding Becker's violations of his probation agreement. At the hearing, Borgman testified the violation report did not allege Becker had violated paragraph 13 of the agreement, which prohibits him from having contact with known drug users.

## *DISCUSSION*

Becker argues Borgman lacked reasonable suspicion to justify a search of his residence under the terms of the probation agreement. He argues the officers were using

4

the probation agreement to search his house without a warrant. He further argues no one used the term "search," although that was the officers' intent from the beginning. He argues he did not consent to a search; rather, he merely acquiesced to having Borgman and the officers "look around." Becker claims any statements he made to the officers are inadmissible because they were made during "the functional equivalent of custodial interrogation," and prior to any *Miranda* warnings. He does not identify any specific statements he seeks to have suppressed. (*See* Doc. Nos. 19, 20 & 21)

The Government responds that Becker consented to a search of his residence and his person as a condition of his probation, and in any event Becker specifically consented to the search on January 3, 2006. (*See* Doc. No. 29) Regarding Becker's statements, the Government asserts Becker was not in custody or under arrest during the search of his residence, and therefore no *Miranda* warnings were required. (*See* Doc. No. 30)

Little discussion is required to resolve these issues. The court finds Borgman had reasonable suspicion to conduct a search of Becker's residence under the terms of the probation agreement. Borgman had a reliable report from Officer Brass that Becker was associating regularly with someone who had two recent arrests for possession of illegal drugs. That, standing alone, was a violation of Becker's probation agreement. Taken together with Becker's positive urine test and his failure to comply with Borgman's directions that he seek drug treatment, the information known to Borgman provided ample reasonable suspicion that Becker was violating his probation agreement. The court finds it irrelevant that when Borgman prepared the violation report, he did not cite Becker for violating paragraph 13, which prohibited Becker from associating with known drug users. The undersigned finds the search was supported by reasonable suspicion that Becker was violating his probation agreement, and therefore, the search was lawful.

Furthermore, the court finds Becker consented to a search of his residence. Even if he misunderstood the first request that Borgman and the officers "look around" his

5

garage, Becker was present for each step of the ensuing search of his residence, and he never raised any protest. On the contrary, he continued to consent each time he was asked if Borgman and the officers could look around each room of the house.

On the issue of Becker's statements, the court first notes the evidence indicates Becker's only statement of any relevance was that no one else possessed a key to the safe. Neither Borgman nor Officer Brass testified to any other potentially incriminating statements made by Becker. The question of whether Becker was in custody at the time he made this statement to the officers is viewed from the perspective of a reasonable person in Becker's position. The *Miranda* protections are triggered only when a defendant is both in custody and being interrogated. *United States v. Hatten*, 58 F.3d 257, 261 (8th Cir. 1995) (citing *United States v. Lawrence*, 952 F.2d 1034, 1036 (8th Cir. 1992)).

> A suspect is considered "in custody" for *Miranda* purposes either when he has been formally arrested and not free to leave the location, or when a reasonable person in the suspect's position would have considered his freedom of movement restrained to a degree that is usually associated with a formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S. Ct. 3138, 3150, 82 L. Ed. 2d 317 (1984); *United States v. Goudreau*, 854 F.2d 1097, 1098 (8th Cir. 1988).

*United States v. Caldwell*, 954 F.2d 496, 499 (8th Cir. 1992).

A "reasonable person" in Becker's position would be one who had prior experience with the circumstances surrounding a formal arrest. The evidence shows Becker had at least one prior arrest. When Becker made the statement, he was not restrained in any manner, and Borgman repeatedly asked Becker's permission before entering various rooms in Becker's home. Under these circumstances, the court finds a reasonable person would not believe his freedom of movement was restrained to a degree usually associated with formal arrest. As a result, no *Miranda* warnings were required for Borgman and the officers to talk with Becker prior to his formal arrest, and Becker's statement need not be suppressed.

## *CONCLUSION*

For the reasons discussed above, it is respectfully recommended that both of Becker's suppression motions be denied. Objections to this Report and Recommendation must be filed by **October 27, 2006**. Responses to objections, if any, must be filed by **November 3, 2006**.

IMPORTANT NOTE: Any party planning to lodge any objection to this Report and Recommendation must order a transcript of the hearing promptly, but not later than **October 19, 2006**, **regardless of whether the party believes a transcript is necessary to argue the objection**. If an attorney files an objection to this report and recommendation without having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

**IT IS SO ORDERED.**

**DATED** this 16th day of October, 2006.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT